# THE JOHNSON COUNTY SAVINGS BANK *vs.* A. C. WALKER.

Third Judicial District, Bridgeport, October Term, 1906.

BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Under the provisions of the Negotiable Instruments Act (General Statutes, §§ 4222, 4225, 4226, 4229) the burden is upon the holder of negotiable paper which is shown to have been obtained by fraud or to have been given for an illegal consideration, to prove that he had no knowledge thereof at the time he received it.

Such a provision simply regulates the order in which relevant evidence may be introduced, and its enactment is fully within the power of the legislative department, notwithstanding its application may, as in the present case, vary the ordinary rule of procedure that it is for him who alleges a fact to prove it, and not for him who denies the allegation to disprove it.

In a suit by a bank on a bill of exchange, after proof that its cashier, acting for it, discounted the bill before its maturity, in good faith, and without knowledge of the fraud or illegal consideration alleged by the defendant, an instruction which authorizes the jury to surmise or infer, in the absence of any evidence to that effect, that the bank might have had other officers and that they might have had knowledge of the alleged fraud which would have affected the bank, is erroneous and harmful, in that it leads the jury away from the case before them and invites them to build up inferences of fact upon other inferences of fact, none of which have any substantial basis of proof.

There is no presumption that the president of a savings-bank is the real as well as the nominal head of the corporation.

The jury were told that they were not bound to believe the evidence of the plaintiff's cashier because it was contained in a deposition, any more than they would have been bound to believe him had he testified from the witness-stand. *Held* that this caution in respect to the credibility of testimony did not exceed the limits of the court's discretion, although it accentuated and made more prejudicial the erroneous instruction as to proof of the bank's knowledge.

Submitted on briefs October 24th—decided December 18th, 1906.

ACTION by the indorsee against the acceptor of four bills of exchange, brought to the District Court of Waterbury and tried to the jury before *Peasley, J.;* verdict and judg-

ment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*John J. O'Neill,* for the appellant (plaintiff).

*Lucien F. Burpee* and *Terrence F. Carmody,* for the appellee (defendant).

BALDWIN, J.   Under General Statutes, §§ 4222, 4225, 4226, 4229, when it is shown, in an action by a transferee of negotiable paper against the maker or acceptor, that the party who negotiated it to the plaintiff obtained it by fraud or for an illegal consideration, the burden is upon the plaintiff to prove that he took it in good faith, for value, and without either actual knowledge of any infirmity in it or defect in the title of the person from whom it was transferred to him, or knowledge of such facts that his action in taking the paper amounted to bad faith.

The bills in question in the case at bar were drawn in favor of an Iowa manufacturing corporation, which had indorsed them to the plaintiff, an Iowa banking corporation.

The defendant offered evidence tending to show that the acceptances were procured by the fraud of the manufacturing corporation, and were given for an illegal consideration. The plaintiff, to show that it was a holder in due course, offered no other evidence than the deposition of William A. Fry. He testified that it had been for many years in the banking business; that he had been its cashier for sixteen years; that, as such, he discounted the acceptances before their maturity, for the manufacturing corporation, on its offering them as paper obtained from one of its customers; and that he had at the time no knowledge of any offset, counterclaim or defense, or of the consideration for which they were given, except from the face of the bills which stated that they were drawn for value received.

The court, after instructing the jury that, should they

find that the acceptances were procured by fraud or for an illegal consideration, the burden would be upon the plaintiff to prove that it had no actual knowledge of this, nor of such facts that its action in taking the drafts amounted to fraud or bad faith, proceeded thus : " It will not be sufficient to discharge that burden for the plaintiff to prove merely that its cashier had no such knowledge, because the plaintiff is a corporation, and like all corporations doubtless had other officers, like a president, secretary, treasurer, board of directors, or board of trustees, and if all of these officers had the required knowledge of the fraud or illegal consideration, the fact that its cashier had no such knowledge would make no difference, and the plaintiff in that event could not recover in this action.   It might also be that the president or any other of the officers of the bank might have authority to lawfully represent the bank and bind it with knowledge of fraud or illegality of the kind alleged, even if the other officers had no such knowledge. The president is the head of his corporation, and unless it appeared to the contrary you would be warranted in assuming that his knowledge of such fraud or illegality would be the knowledge of the corporation, even though the cashier knew nothing of it."   In a previous part of the charge the following observations had been made : " From the evidence of the plaintiff that you have before you I will say that you are not bound to believe the evidence of Mr. Fry because it is contained in a deposition, any more than you would be bound to believe his evidence if he were here and testified from the witness-stand.   And in determining the extent to which credence should be given to his testimony you may take into consideration the evidence offered by the defendant, and of the circumstances, the custom and course of dealing, and the usual course of dealing, by which banks handle such transactions."

No evidence had been introduced as to what officers, other than the cashier, the plaintiff had, nor as to the powers or duties of any other officer.   To instruct the jury that the bank might have had a president, who might have

had knowledge of a defect in the title to the acceptances when they were discounted, and that they would be warranted, in the absence of evidence to the contrary, in assuming that such knowledge would be the knowledge of the corporation, led them away from the case presented by the testimony, and invited them to build up an inference of fact upon other inferences of fact, none of which had any substantial basis of proof. *Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 240, 50 Amer. St. Rep. 80, 33 Atl. 902; *State* v. *Kelly*, 77 Conn. 266, 271, 58 Atl. 705. There is no presumption of law or fact that the president of a savings-bank is the real as well as the nominal head of the corporation. The only evidence before the jury as to the manner in which the plaintiff acquired the acceptances was that they were discounted by the cashier on his own responsibility. If this were true, notice of fraud in obtaining them to a president who knew nothing of the offer of them for discount, and had no duties to perform with reference to such an offer, would be unimportant. *Farmers & Citizens Bank* v. *Payne*, 25 Conn. 444, 449.

The reference to Mr. Fry's deposition did not go beyond the limits within which a trial judge may at his discretion caution the jury in respect to the credibility of testimony; but it accentuated and made more prejudicial the statement that it would not be enough for the plaintiff to prove merely that its cashier had no knowledge of any defect of title.

The defendant set up in her answer that the acceptances were procured by fraud and that the plaintiff had notice of this when it acquired title, and paid no consideration for them. These averments were denied by the reply. The plaintiff contends that the statute which threw upon it, under these pleadings, the burden of proving its ignorance of the defect, is an invasion of the legislature into the field of judicial power, and therefore unconstitutional. This provision of the Negotiable Instruments Act introduces no evidence immaterial to the issue, and excludes none which is material. It simply regulates the manner of introducing relevant evidence, and its enactment was fully

within the power of the legislative department, notwithstanding its application may, as in this case, vary the ordinary rule of procedure that it is for him who alleges a fact to prove it, and not for him who denies the allegation to disprove it.

The evidence has not been properly certified to us in support of the reason of appeal assigned upon the denial of the motion to set aside the verdict.

None of the other reasons of appeal call for particular discussion. While the charge was somewhat loosely framed, it was, with the exception of the part above considered and held to be erroneous, substantially correct when taken as a whole.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.